**Emerito Canlapan MANALO,**
**Petitioner,**

v.

**John ASHCROFT,\* Attorney**
**General Respondent.**

**No. 00–71023.**

**BIA No. A40–466–941.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 4, 2001.

Decided Dec. 21, 2001.

---

\* John Ashcroft is substituted for his predecessor, Janet Reno, as Attorney General of the United States.  Fed. R.App. P. 43(c)(2)

**818**

Before PREGERSON, TASHIMA, and BERZON, Circuit Judges.

### MEMORANDUM **

Emerrito Canlapan Manalo ("Manalo") appeals from the decision of the Board of Immigration Appeals ("BIA") denying his request for a discretionary waiver of deportation pursuant to INA § 241(a)(1)(H), 8 U.S.C. § 1251(a)(1)(H) (1994).[1] We grant the petition for review and remand. Because the facts are familiar to the parties, we recount them only as necessary to explain our decision.

1. INA § 241(a)(1)(H) gives the Attorney General discretion to waive deportation of an alien who meets certain statutory eligibility requirements.[2] There is no dispute that Manalo met the § 241(a)(1)(H) eligibility requirements; the only issue is whether the BIA abused its discretion in denying this waiver. To the extent that the BIA adopted the decision of the Immigration Judge ("IJ"), we review the IJ's decision; otherwise, our review is limited to the BIA's decision. *Garrovillas v. INS*, 156 F.3d 1010, 1013 (9th Cir.1998).

2. In 1994, when the IJ entered his decision, Ninth Circuit precedent precluded him from considering in the § 241(a)(1)(H) discretionary determination Manalo's fraud in obtaining a visa and entering the United States (the "initial fraud"). *Braun v. INS*, 992 F.2d 1016, 1020 (9th Cir.1993). The IJ recognized this constraint and did not rely upon Manalo's initial fraud in denying the waiver.

By 2000, however, when the BIA affirmed the IJ's decision, intervening decisions by the Supreme Court and the BIA made clear that the BIA generally could consider an alien's initial fraud when making the § 241(a)(1)(H) discretionary decision. In particular, in *INS v. Yang*, 519 U.S. 26, 117 S.Ct. 350, 136 L.Ed.2d 288 (1996), the Court noted that the text of § 241(a)(1)(H) imposes no limitations on the factors that the BIA may consider in exercising its discretion, but cautioned that an irrational departure from policy adopted by the BIA could constitute an abuse of discretion. *Id.* at 30, 32. *Yang* was followed by *In re Tijam*, Int. Dec. 3372, 1998 WL 883735 (BIA 1998) (en banc), in which the BIA made an avowed alteration of its policy regarding initial fraud. Section 241(a)(1)(H), noted the

---

** This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Circuit Rule 36–3.

1. We have jurisdiction pursuant to INA § 106, 8 U.S.C. § 1105a (1994), as amended by IIRIRA § 309(c)(4). *See* note to 8 U.S.C. § 1101.

2. The Attorney General delegated his discretionary authority to the BIA. 8 C.F.R. § 3.1 (1994).

BIA, "was intended to afford relief to those aliens whose 'after-acquired family ties' outweighed their fraud." *Id.* at 11–12 (quoting *Reid v. INS,* 420 U.S. 619, 630, 95 S.Ct. 1164, 43 L.Ed.2d 501 (1975)).

The BIA in *Tijam* also indicated which factors are likely to be useful in the balancing process. *Id.* at 6–7. Rather than conducting the balancing inquiry itself on appeal, however, the BIA in *Tijam* remanded to the IJ so as to provide the alien "the opportunity to address the circumstances surrounding her initial fraud and to counterbalance the adverse factors in the record, including the initial fraud, with factors in her favor." *Id.* at 12.

■ 3. The BIA's decision in this case affirms the IJ's decision, but in so doing cites *Yang* and *Tijam* for the proposition that the IJ should consider the initial fraud in the § 241(a)(1)(H) waiver determination. It thus appears that the BIA affirmed in partial reliance upon Manalo's initial fraud, and may well not have affirmed but for that consideration. The IJ, we note, appears to have applied a standard akin to an extreme hardship test rather than the *Tijam* balancing of equities approach, so it is all the more likely that the BIA affirmed based on its own *Tijam* balancing. *See, e.g.,* IJ's Opinion at 15 ("I find the respondent's assertion that he is *essential* to the well-being of his parents to be unsubstantiated . . . ." (emphasis added)); *id.* at 16 ("I cannot agree that the respondent will be *totally unable to subsist* in the Philippines." (emphasis added)); *id.* ("While these acts are noteworthy, I do not believe them to be of such an *unusual or outstanding* nature as to *mandate* a ruling in his favor . . . ." (emphases added)); *id.* ("[s]mall contributions to the veterans organization are not of such nature as to *require* a ruling in his favor . . . ." (emphasis added)).

Under these circumstances, the BIA should have remanded to the IJ for development of the record regarding the circumstances surrounding the initial fraud. In 1994, Manalo did not have any reason to develop the record before the IJ on the circumstances surrounding the initial fraud. By considering Manalo's initial fraud, but not following the remand precedent set in *Tijam,* the BIA abused its discretion. *See Yepes–Prado v. INS,* 10 F.3d 1363, 1370 (9th Cir.1993) ("BIA acts arbitrarily when it disregards its own precedents and policies without giving a reasonable explanation for doing so." (citation omitted)).

We therefore grant the petition for review and remand to the BIA so that it may, consistent with *Tijam,* send the case back to the IJ for further hearings.

REVERSED and REMANDED.